IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02160-SKC

ESTATE OF SERAFIN FINN, by and through its personal representative Melissa R. Schwartz,
    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality;
DEPUTY JASON GENTEMPO, in his individual capacity;
    Defendants.

## CITY AND COUNTY OF DENVER'S MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

Defendant City and County of Denver ("Denver"), by and through undersigned counsel, hereby files this Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Denver respectfully requests that this Court dismiss the claims against it.

## BACKGROUND

Plaintiff Melissa R. Schwartz, special administrator of the Estate of the late Serafin Finn ("Finn"), asserts claims in connection with an incident involving Finn and co-Defendant Deputy Jason Gentempo ("Gentempo") on March 20, 2019. Plaintiff alleges Gentempo was transporting Finn to jail from a Denver health facility when Finn purportedly tried to spit in Gentempo's face and Gentempo responded by punching him in the face. *See* Pl. Cmplt. at ¶¶ 2-4 (Docket No. 2). Plaintiff contends Gentempo then struck Finn – who was shackled in a wheelchair – multiple times in the face, before flipping the wheelchair, smashing Finn's head into the ground, and utilizing "painful pressure points." *See id.* at ¶ 5. According to Plaintiff, Finn suffered hematomas and abrasions from the incident, all of which was captured on surveillance video. *See id.* at ¶¶ 7-8.

Plaintiff next alleges that following an internal investigation, the Internal Affairs Bureau ("IAB") of the Denver Sheriff's Department ("DSD") recommended Gentempo be disciplined for multiple policy violations, but the DSD Conduct Review Board rejected those recommendations and exonerated Gentempo. *See id.* at ¶¶ 9-10; 55-57. According to Plaintiff, IAB Investigator Iriart then attempted to publicize that decision, along with DSD's "more general practice of covering up" officer misconduct, and was fired by DSD for doing so in October 2020. *See id.* at ¶¶ 61-62. Plaintiff then points to a small number of separate incidents allegedly involving the use of force, or accusations of force, by DSD employees including Gentempo. *See id.* at ¶¶ 68-81. While Plaintiff avers Gentempo has never been disciplined for accusations levied against him, Plaintiff makes no such allegation with respect to the other DSD officers he mentions. *See id.*

On that basis, Plaintiff seeks to hold Denver liable for Gentempo's alleged misconduct pursuant to 42 U.S.C. § 1983 and principles of municipal liability. *See id.* at ¶¶ 107-112. Plaintiff asserts claims against Denver for a "widespread practice of excessive force and frequent cover-ups" by employees in the face of inadequate supervision and discipline, and for allegedly failing to train officers how to respond when detainees spit on them. *See id.* Plaintiff's allegations, however, are largely conclusory and lack sufficient facts to give rise to a claim for relief under any theory alleged. Moreover, Plaintiff's ability to recover damages in this lawsuit is limited – if not extinguished – by the Colorado survival statute, Colo. Rev. Stat. § 13-20-101. As further set forth below, Denver should be dismissed[1] from this lawsuit.

---

[1] A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* Under this standard, a court should disregard conclusory allegations and look only to

## ARGUMENT

### I.  Plaintiff Fails to Plead a Viable Municipal Liability Claim Against Denver

Plaintiff asserts claims against Denver under 42 U.S.C. § 1983 for its alleged failure to adequately train, supervise, and discipline its employees with respect to the use of excessive force. *See* Pl. Cmplt. at ¶¶ 107-112.  These allegations constitute an attempt to sue Denver under *Monell v. Dep't. of Social Svcs. of New York City,* 436 U.S. 658 (1978).  Pursuant to *Monell*, a municipality cannot be held liable for the actions of its employees under a *respondeat superior* theory.  *See Monell*, 436 U.S. at 690-91; *Schneider v. Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013).  Instead, a plaintiff attempting to plead a claim for municipal liability must allege facts showing that (1) he suffered an underlying violation of his constitutional rights in the case at hand; and (2) a municipal policy or custom was the "moving force" behind the constitutional deprivation. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (quoting *Monell,* 436 U.S. at 673); *Myers v. Ok. Cty. Bd. Of Cty. Cmmrs.*, 151 F.3d 1313, 1320 (10th Cir. 1998).  Once the first prong – the existence of an underlying constitutional violation – has been adequately alleged, the plaintiff must then plead facts as to the existence of the following elements in order to establish the second prong: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider,* 717 F.3d 760, 769 (10th Cir. 2013).  Plaintiff has not done so here.

### A. Plaintiff Fails to Plead the Existence of an Unlawful Policy, Practice or Custom

---

whether the remaining factual allegations plausibly suggest the defendant is liable.  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) "'[P]lausibility' in this context . . . refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff's claims against Denver fail because Plaintiff fails to point to any municipal policy or custom that plausibly gave rise to Finn's alleged harms. "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Schneider*, 717 F.3d at 770 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). An "official policy or custom" may take the form of "a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Id*. To give rise to liability, the policy or practice at issue must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (citations and internal quotations omitted).

Here, Plaintiff does not attribute Finn's alleged harms to any formal policy or decision by a Denver policymaker. *See generally* Pl. Cmplt. Instead, Plaintiff alleges a "widespread practice of excessive force and frequent cover-ups" by Denver employees, which she generically attributes to municipal failures in supervision and discipline. *See id.* at ¶¶ 107 – 112. Plaintiff also asserts a failure-to-train claim with respect to "the use of force against allegedly spitting arrestees." *Id.* Plaintiff, however, has not pled sufficient facts to support these claims.

1. Custom or Widespread Practice of Excessive Force and/or Cover-Ups

Plaintiff's allegations as to Denver's alleged pattern of excessive force and investigatory cover-ups are unavailing. "Cities may incur liability when they adopt unconstitutional 'longstanding practice[s] or custom[s]' that become 'standard operating procedure[s].'" *Murphy v. City of Tulsa*, 950 F.3d 641, 649 (10th Cir. 2019) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491

U.S. 701, 737 (1989)).  But merely parroting the elements of these claims is not enough; a plaintiff must plead actual facts "suggesting that similarly situated individuals were mistreated by the municipality in a similar way."  *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).  To do so, the complaint must plead facts sufficient to "correlate [the municipality's] general systemic failures to the particular constitutional violations" currently alleged.  *Martinez v. City & Cty. of Denver*, No. 11-102-MSK-KLM, 2013 WL 5366980, at *15 (D. Colo. Sept. 25, 2013); *see also Waller v. City & Cty. Of Denver*, 932 F.3d 1277 (10th Cir. 2019).

Here, the majority of Plaintiff's *Monell* allegations are generic recitations of the elements and conclusions as to Denver's liability, none of which are actionable.  *See* Pl. Cmplt. at ¶¶ 84-93; 102-106; 107-112; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  And while Plaintiff attempts to bolster these conclusions by referencing certain other use of force allegations between 2012 and 2021 – four involving Gentempo and six involving separate DSD employees – these allegations, even accepted as true for purposes of this Motion, fail to establish a custom or practice of excessive force among Denver officers.  *Compare* Pl. Cmplt. at ¶¶ 69-81 *with Martinez,* 2013 WL 5366980, at *15 (merely pointing to a series of separate incidents under "the general umbrella of excessive force" is insufficient to support *Monell* claim); *see also Atwell v. Gabow*, No. 06-2262-JLK, 2008 WL 906105, at *8 (D. Colo. Mar. 31, 2008) ("Simply aggregating eight individual claims and calling them the result of a custom or policy of discrimination is insufficient") (citations omitted).

While Plaintiff pleads that force was used on other occasions, she pleads no facts from which it could be discerned that the force used in any other incident was unjustified or "excessive." The Complaint relies heavily on unsubstantiated third-party allegations and omits a host of crucial

5

details, including any information as to how such incidents occurred, where they occurred, names of the involved inmates, stated reasons for the officers' use of force, and/or any explanation as to why the force at issue was in fact improper in light of the situation. *See* Pl. Cmplt. at ¶¶ 69-81. Moreover, Plaintiff avers no factual similarity between the instant case – an allegedly excessive response to a detainee spitting at an officer – and the other incidents she mentions. These sparse references to separate incidents are insufficient to plausibly support a *Monell* claim. *See Rodriguez v. Chavez*, No. 12-1071, 2014 WL 4627274, at *6 (D. Colo. Sept. 14, 2014) (excessive force statistics alone are insufficient to state claim against municipality); *Martinez,* 2013 WL 5366980, at *15; *Atwell*, 2008 WL 906105, at *8; *see also Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (number of complaints is insufficient to prove custom); *Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998) ("There must also be some showing that the complaints had merit").

Insofar as Plaintiff separately asserts a *Monell* claim based on a custom or pattern of "cover-ups," her allegations similarly fail. Plaintiff does not allege that even a single incident she mentions went uninvestigated, nor does she plead a single fact as to the nature of any investigation – let alone any deficiency therein – outside of the instant case. *See, e.g., Crespin v. Castro*, No. 09-427-MSK-MJW, 2010 WL 3894197, at *5 (D. Colo. Sept. 30, 2010) (past complaints against officers only actionable if plaintiff shows they were ignored or inadequately investigated); *see also Martinez*, 2013 WL 5366980, at *15. Accordingly, neither Plaintiff's conclusory assertions of liability nor her references to other incidents give rise to a claim for relief.

    2. <u>Failure to Train, Supervise, and/or Discipline</u>

Plaintiff's Complaint also repeatedly alleges that Denver exhibited failures in the areas of training, supervision, and discipline. *See* Pl. Cmplt. at ¶¶ 64-83. Although the failure of a

6

municipality to train its employees may support a *Monell* claim, such a theory represents the most "tenuous" sort of municipal liability under § 1983. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). In order to state a failure-to-train claim, a plaintiff must set forth competent factual allegations that: (1) the training provided was inadequate; (2) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (3) there is a direct causal link between the constitutional deprivation and the inadequate training. *See, e.g., Trujillo v. Campbell*, No. 09-03011-CMA-KLM, 2012 WL 3609747, at *6 (D. Colo. Aug. 22, 2012). To establish these elements, "a plaintiff must identify a specific deficiency that was obvious and closely related to his injury." *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010) (quoting *Lopez v. LeMaster,* 172 F.3d 756, 760 (10th Cir. 1999) (internal citations omitted)). Plaintiff's allegations here fail to establish the requisite elements.

As an initial matter, the only training failure apparently alleged by Plaintiff pertains specifically to "the use of force against allegedly spitting arrestees." Pl. Cmplt. at ¶¶ 11, 65, 86, 88, 104. And the only *facts* she pleads to support such a claim are Gentempo's alleged statements to IAB that "there's nothing in our policy that will tell you what exactly to do when you're being spit on" and his acknowledgment that "he had not reviewed or signed 1,631 policy documents contained in DSD's employee training database." *Id.* at ¶¶ 66-67. This is unavailing, however, because the statement of a single employee as to his training or lack thereof cannot give rise to a failure-to-train claim. *See City of Canton*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Moreover, Plaintiff does not mention any incident outside the instant case involving a

7

"spitting arrestee" or any other use of force by a DSD officer in response to a spitting incident. *See generally* Pl. Cmplt.[2]  Plaintiff also fails to indicate what Denver's existing training programs entail and she identifies no specific training that, if provided, would have prevented Finn's alleged harms.  Absent such facts, Plaintiff's failure-to-train claim cannot proceed.  *See, e.g., Porro,* 624 F.3d at 1328 (quoting *Lopez,* 172 F.3d at 760); *see also Bark v. Chacon*, No. 10-cv-01570, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (plaintiff could not maintain failure-to-train claim when he failed to set forth "specific deficiencies in training and supervision, or explain how the incident . . . could have been avoided with different or better training and supervision"); *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1207-08 (D. Colo. 2020).

Plaintiff's allegations as to a custom or practice of disciplinary and supervisory failures fare no better.  "Allegations of inadequate discipline and/or supervision are treated as failures to train." *Estate of Reat v. Rodriguez*, 12-2531-REB-MEH, 2014 WL 4358333, at *2, n.4 (D. Colo. Sept. 3, 2014) (citing *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012)).  Although Plaintiff concludes Gentempo was not disciplined for other "*accusations*" of excessive force" (*see* Cmplt. at ¶¶ 89; 104; *see also id.* at ¶¶ 68-73), Plaintiff pleads no facts as to any of those incidents which plausibly suggest that any prior accusation against Gentempo was meritorious and/or that Gentempo's actions were improper but nonetheless went unpunished.  *See,*

---

[2] "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (emphasis added).  In certain cases, however, a failure-to-train claim may be asserted upon a "single incident" of unconstitutional activity.  In these cases, the violation must be "a highly predictable consequence" of the absence of the particular training alleged. *Connick*, 563 U.S. at 64.  Put differently, there exists the chance, "however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under 1983 without proof of a pre-existing pattern of violations." *Id.* (citing *City of Canton*, 489 U.S. at 390 n.10)).

8

*e.g., Rodriguez v. Chavez*, No. 12-1071, 2014 WL 4627274, at *4 (D. Colo. Sept. 14, 2014) (emphasizing absence of facts indicating that complaints against officers were in fact meritorious). Similarly, Plaintiff does not aver that any prior incident – whether involving Gentempo or any other officer – went uninvestigated, nor does she describe any prior investigation that was allegedly deficient or somehow amounted to a "cover-up." *See Martinez,* 2013 WL 5366980, at *15 (prior uses of force not actionable absent showing that they went unreported or were inadequately investigated); *Crespin,* 2010 WL 3894197, at **4-5. Plaintiff's allegations are thus not actionable.

### B.  The Complaint Fails to Plead Facts Plausibly Demonstrating Causation

Plaintiff's Complaint must also be dismissed because it fails to attribute Finn's alleged harms to any municipal practice, let alone deficiency or shortcoming.  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, *rigorous standards of culpability and causation must be applied* to ensure that the municipality is not held liable solely for the actions of its employee." *Waller*, 932 F.3d at 1284 (quoting *Brown*, 520 U.S. at 405) (emphasis added).  Put differently, "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (quoting *Monell*, 436 U.S. at 673).  There must be "a direct causal link" between the government action and the alleged deprivation. *Id.*  Plaintiff in this case pleads no facts to establish such a link.

As an initial matter, a host of Plaintiff's *Monell* allegations refer to acts or incidents that occurred in 2020 or 2021 and thus post-date the incident involving Finn and Gentempo.[3]  Any

---

[3] These include nearly all of the above-referenced use of force incidents that involved Denver employees other than Gentempo, one of the four incidents allegedly involving Gentempo,

reliance by Plaintiff on these materials is unavailing because "[i]t is logically impossible for an investigation that post-dates the alleged constitutional deprivation to have caused that deprivation." *Casey v. City of Fed. Heights*, No. 05-1013-REB-KLM, 2008 WL 2559443, at *2 (D. Colo. June 23, 2008); *see also Rossiter v. Robinson*, 716 F. Supp. 2d 1018, 1030 (D. Colo. 2010) (rejecting post-incident knowledge as basis for failure-to-supervise claim under *Casey*).

The prior incidents Plaintiff mentions also cannot support a *Monell* claim because Plaintiff fails to connect them to the instant case. While Gentempo's alleged actions here took place in the specific context of having just been spit at, Plaintiff points to no other incident which is alleged to involve a spitting detainee. And as noted above, Plaintiff pleads no facts which establish the impropriety of any other use of force incident, let alone any supervisory or disciplinary failure that plausibly led to Gentempo's actions in this case. Finally, Plaintiff has pled no facts from which this Court could infer that Finn's alleged harms would *not* have occurred if Gentempo had received more or different training. *See City of Canton*, 489 U.S. at 391. Accordingly, Plaintiff has failed to plausibly allege that Denver was the "moving force" of Finn's alleged harms.

### C. The Complaint Fails to Demonstrate the Existence of Deliberate Indifference

Each of Plaintiff's *Monell* theories also fails because the Complaint makes no viable showing of deliberate indifference by Denver or any of its decisionmakers. The existence of deliberate indifference is a requisite element of each of Plaintiff's claims against Denver. *See, e.g., Cacioppo v. Town of* Vail, 528 F. App'x 929, 931 (10th Cir. July 8, 2013) (policy or custom must be "enacted or maintained with deliberate indifference to an almost inevitable constitutional

---

and the entirety of Plaintiff's allegations regarding the post-incident investigation of this incident and Investigator Iriart's subsequent alleged termination. *See* Pl. Cmplt. at ¶¶ 55-83.

injury.") (quoting *Schneider*, 717 F.3d at 770) (additional citations omitted)); *City of Canton*, 489 U.S. at 388 ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference").

A finding of deliberate indifference requires "actual or constructive notice [on behalf of the municipality] that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998). A showing of "notice" for deliberate indifference purposes typically requires "a pattern of tortious conduct." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (citing *Barney*, 143 F.3d at 1307).

Here, Plaintiff fails to plead facts giving rise to any such finding. For one, many of Plaintiff's *Monell* allegations cannot support a deliberate indifference finding for the same reason they cannot establish causation – they post-date the incident in question and Denver cannot be "on notice" of that which has not yet occurred. *See supra* Section I(B).[4] While Plaintiff may argue that her allegations as to Investigator Iriart's alleged post-incident "whistleblowing" are sufficient to establish the requisite nexus between past DSD incidents and the instant case, the Complaint pleads no facts to support such a finding. Indeed, in describing the information Iriart allegedly attempted to release, Plaintiff merely references "the DSD's unfounded decision to exonerate [] Gentempo, along with its more general practice of covering up the misconduct of its officers." Pl. Cmplt. at ¶ 61. Plaintiff includes no details whatsoever as to this purported "general practice" –

---

[4] "Incidents that occurred subsequent to the incident at issue in this case cannot have provided Denver with notice of a deficiency in its training program before that incident, thus they cannot be used as evidence that, prior to [the officer's] use of force against [plaintiff], Denver "decisionmakers ... deliberately chose[] a training program that w[ould] cause violations of constitutional rights." *Waller*, 932 F.3d at 1286 (quoting *Connick*, 563 U.S. at 62).

i.e. what it entailed, when it was in effect, or who was responsible – let alone any specific facts actually alleged by Iriart that could give rise to a finding of deliberate indifference.

Finally, the Complaint pleads no facts to support an inference that Denver was "on notice" of, but chose to disregard, any pattern of excessive force by its employees in general, let alone in the specific circumstance in which a detainee spits on an officer. "It is not merely the fact that complaints were made that gives rise to th[e] inference [of deliberate indifference]; it is the municipality's failure to adequately respond to or investigate the complaints, or its failure to act in response to established instances of unconstitutional conduct that gives rise to liability." *Crespin*, 2010 WL 3894197, at *4 (citing *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). Because Plaintiff avers no facts whatsoever as to any prior investigation – or lack thereof – into any prior incident, and because Plaintiff pleads no additional facts that could plausibly give rise to a deliberate indifference finding, Plaintiff's municipal liability claims also fail for this reason.

## II.     The Colorado Survival Statute Precludes the Relief Plaintiff Seeks

Plaintiff in this action is Melissa R. Schwartz, who was appointed Special Administrator of Finn's estate in March 2021 following Finn's death in an unrelated car accident. *See id.* at ¶ 14. Because Finn died before obtaining any damage award in this matter, the Colorado survival statute expressly limits Plaintiff's allowable recovery to economic damages. Because Plaintiff cannot recover non-economic damages; i.e. for Finn's pain, suffering, and disfigurement, her claims for such damages should be dismissed. *See id.* at Section VI (Prayer for Relief).[5]

Any recovery by Plaintiff here is limited to the economic damages of lost earnings and

---

[5] Although resolution of this issue may not fully dispose of this lawsuit, Denver submits that a judicial determination of available damages at this stage would be useful to all parties.

expenses in connection with the March 20, 2019, incident.  *See* C.R.S. § 13-20-101(1); *see also Rosenblum v. Colo. Dept. of Health*, 878 F. Supp. 1404, 1408-09 (D. Colo. 1994).  Plaintiff's underlying claim against Gentempo is an excessive force claim pursuant to 42 U.S.C. § 1983.  Section 1983, however, is silent as to the categories of damages an estate may recover on behalf of a deceased plaintiff or claimant.  In this situation, 42 U.S.C. § 1988 requires the court look to applicable state law, so long as it is "not inconsistent with the Constitution and laws of the United States."  *Rosenblum v. Colo. Dept. of Health*, 878 F. Supp. 1404, 1408-09 (D. Colo. 1994) (citing 42 U.S.C. § 1988).  Here, the Colorado survival statute (the "Act"), states in pertinent part:

> All causes of action . . . shall survive and may be brought or continued notwithstanding the death of the person in favor or against whom such action has accrued . . . and, in tort actions based upon personal injury, the damages recoverable after the death of the person in whose favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death.  An action under this section shall not preclude an action for wrongful death under part 2 of article 21 of this title.  C.R.S. § 13-20-101(1).

Because the applicable federal law (§ 1983) is silent on survival, the Act governs the instant case unless its application "would be inconsistent with the federal policy underlying the cause of action under consideration."  *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978) (quoting *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 465 (1975)).  The availability of a "federal remedy" (i.e. recovery of § 1983 damages) "does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an action in disregard of the [applicable] state law."  *Id.* at 593.  Put differently, state laws are not inconsistent with federal policy "merely because the statute causes the plaintiff to lose the litigation."  *Id.*  Applying these principles, the Supreme Court in *Robertson* held that Louisiana's then-applicable survival statute – which allowed a personal representative to maintain claims for "property" damages only – was *not inconsistent* with 42 U.S.C. § 1983 and

13

thus controlled. In reversing the District and Circuit courts, the Court held there was "nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship." *Id.* at 591. The Court emphasized the fact that the Louisiana law only precluded certain, but not all, avenues of recovery (i.e. no abatement of malicious prosecution claims), and found that § 1983's goal of compensating individuals for violations of their rights would not be undermined by merely limiting the available damage categories in survival claims. *See id.* at 590-93.

In 1994, the District of Colorado followed *Robinson* and effected the Act's damage limitation in circumstances directly analogous to the case *sub judice*. *See Rosenblum v. Colo. Dept. of Health*, 878 F. Supp. 1404, 1408-09 (D. Colo. 1994). In *Rosenblum*, the estate of a recently deceased plaintiff sought economic and non-economic damages under the ADA. The court dismissed the non-economic damage claims, finding that the Colorado Act was "not inconsistent with the ADA, which does not address the availability of damages after the plaintiff's death." *Id*. (quoting *Robertson*, 436 U.S. at 588-89). In so holding, the court echoed *Robertson's* finding that application of the Act similarly did not offend the policies of deterrence and victim compensation on which the ADA is based. *See id.; see also Slade ex rel. Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) (applying state law survival statute in Title VII context).

In this case, the Act expressly limits Plaintiff's recovery to economic damages sustained prior to Finn's death. As an initial matter, the Act reaches Plaintiff's excessive force claim because "1983 claims are best characterized as personal injury actions." *Wilson v. Garcia*, 471 U.S. 261, 261 (1985), *superceded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 379-80 (2004). The Supreme Court has "repeatedly noted that [] § 1983

14

creates a species of tort liability." *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (citations and quotations omitted); *see also French v. City of Cortez*, 361 F. Supp. 3d 1011, 1041-42 (D. Colo. 2019) (unconstitutional acts under 1983 are "constitutional torts").

Next, as in *Robertson*, the Act here does not preclude all avenues of recovery. The Act allows for economic damages and expenses incurred before death, contains no *per se* abatement on malicious prosecution claims, and perhaps most importantly, expressly states that the limitation in survival claims does *not* apply to preclude wrongful death claims. C.R.S. § 13-20-101(1). Moreover, this court's unwillingness in *Rosenblum* to invalidate the Act in the ADA context applies with full force in the § 1983 context, as both federal statutes are based on the same policies of victim compensation and deterrence in the face of rights violations. *Compare Rosenblum*, 878 F. Supp. at 1408-09, *with Robertson*, 436 U.S. at 592-93. Accordingly, the extent of Plaintiff's potential recovery should be determined with reference to the Act's specific guidance, rather than the interpretation of a federal cause of action that is expressly silent as to the same.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims against Denver should be dismissed.

DATED this 11th day of October, 2021.

Respectfully submitted,

By: *s/ Raana Haidari*
Raana Haidari, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
Telephone: (720) 913-3100
Facsimile: (720) 913-3155
E-mail: raana.haidari@denvergov.org
*Counsel for the City and County of Denver*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October, 2021, the foregoing **CITY AND COUNTY OF DENVER'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** was filed with the Clerk of the Court using the CM/ECF system, which will serve the following:

Benjamin Hartford
The Law Office of Benjamin Hartford
ben@bhartfordlaw.com

Nicholas A. Lutz
Matthew Cron
Omeed Azmoudeh
Rathod Mohamedbhai, LLC
nl@rmlawyers.com
mc@rmlawyers.com
oa@rmlawyers.com
*Counsel for Plaintiff*

Eric M. Ziporin
Tiffany Toomey
SGR, LLC
eziporin@sgrllc.com
ttoomey@sgrllc.com
*Counsel for Defendant Jason Gentempo*

                                                    *s/ Sarah Peasley*
                                                    Denver City Attorney's Office