# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02160-SKC
ESTATE OF SERAFIN FINN, by and through its personal representative Melissa R. Schwartz,
    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality;
DEPUTY JASON GENTEMPO, in his individual capacity;
    Defendants.

---

### CITY AND COUNTY OF DENVER'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO RECOMMENDATION FOR DISMISSAL

---

Defendant City and County of Denver ("Denver"), through counsel, respectfully submits this response to Plaintiff's Objection to Magistrate Crews' Recommendation of Dismissal (Doc. #65, "Objection"), and states as follows:

## ARGUMENT[1]

On March 20, 2019, Defendant Gentempo and Decedent Serafin Finn ("Finn") were

---

[1] When a Magistrate Judge issues a recommendation on a dispositive matter, Fed.R.Civ.P. 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." In reviewing the matter, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* An objection is proper if it is timely filed and specific enough to enable the "district judge to focus attention on those issues— factual and legal—that are at the heart of the parties' dispute." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In the absence of a specific objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *Ajaj v. United States*, 2020 WL 5758521, at *2 (D. Colo. Sept. 28, 2020). "The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is 'no clear error on the face of the record.'" *Montgomery v. Holweger*, 529 F.Supp. 3d 1212, 1215 (D. Colo. 2021) (citing FED.R.CIV.P. 72(b), Advisory Committee Notes).

involved in an incident in which Gentempo is alleged to have used excessive force. Plaintiff sued Gentempo for that incident. Plaintiff also sued the City and County of Denver, however, for its allegedly (a) improper post-incident investigation, and (b) deficient training of correctional officers in responding to inmates who spit on them. Denver filed a motion to dismiss, arguing, *inter alia*, any theories of liability based on Denver's allegedly improper *post-incident* investigation are precluded as a matter of law in the Tenth Circuit based on "principles of linear time," Plaintiff failed to plead an actionable training failure for a number of reasons, and all of Plaintiff's claims lack adequate facts to conceivably show causation or deliberate indifference under any theory. (Doc. # 32).

In deciding Denver's motion to dismiss, Magistrate Judge Crews dismissed Plaintiff's claims for a few reasons (Doc. #59). First, Judge Crews explained that Plaintiff had failed to adequately allege an actionable custom or policy under § 1983 because Denver's actions *"after* Deputy Gentempo's post investigation . . . cannot be said to have caused the violation of Finn's constitutional rights." *Id.* at 8 (citing *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1286-87 (10th Cir. 2019)). Judge Crews also found Plaintiff's failure-to-discipline (i.e. cover-up) allegations were conclusory and thus failed to state a claim because Plaintiff failed to sufficiently plead similar or prior conduct *before* this incident. *Id.* at 9 (citing *Martinez v. City & Cty. of Denver*, No. 11-cv-102-MSK-KLM, 2013 WL 5366980, at *15 (D. Colo. Sept. 25, 2013)).[2]

With respect to any failure-to-train or supervise claim, Judge Crews again found an absence

---

[2] Judge Crews also noted that Plaintiff's allegations of other alleged use-of-force incidents involving either Gentempo, or other DSD employees, were insufficient to support a claim for any municipal policy, custom, or practice. *See id.* at 8-9. Plaintiff does not challenge Judge Crews' findings that she has failed to prove a policy or custom of excessive force or "cover-ups," but rather only challenges the determinations regarding ratification and failure-to-train.

of adequate factual support because the few other incidents of alleged misconduct mentioned by Plaintiff occurred either *after* the incident in this case, or were "too different" from the allegations in this case. (Doc. #59 at 10-11). Judge Crews also found that Deputy Gentempo's alleged statement about his own absence of training regarding "spitting arrestees" was insufficient to support such a claim under *City of Canton* v. *Harris*, 489 U.S. 378 (1989). And third, Judge Crews explained that "the Court applies greater scrutiny to a Plaintiff's alleged instances of a failure to train," and applying that standard, found Plaintiff's allegations insufficient to state such a claim. (Doc. #59 at 11). Finally, Judge Crews – again relying on Tenth Circuit precedent – held that Plaintiff's ratification claim failed because it was based on the post-incident investigation into the incident, and thus could neither satisfy the requisite deliberate indifference or causation elements. *See id.* at 8, 11-12.[3]

Plaintiff objects to Judge Crews' analysis, making essentially the same arguments she previously made in response to Denver's motion to dismiss. (*see generally* Doc. #65). The crux of Plaintiff's argument is that the allegedly deficient investigation into this incident, standing alone, somehow supports a § 1983 claim against Denver despite it necessarily taking place *after* the alleged harm. In so arguing, Plaintiff asks this Court to disregard well-established Tenth Circuit precedent on this identical issue. Plaintiff further argues she has pled adequate facts to support her ratification and failure-to-train claims. Again, however, Plaintiff's arguments are unavailing because Tenth Circuit and Supreme Court precedent preclude the relief she seeks. Because Judge

---

[3] Not only did Judge Crews find Plaintiff's ratification claim was precluded by an absence of any facts showing *deliberate indifference* under *Schneider*, he also specifically referred back to his previous finding that Plaintiff could not satisfy *causation* for *Monell* purposes under *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1286-87 (10th Cir. 2019). Recommendation, at 8, 11-12 (relying on *Waller*, 932 F.3d at 1286-87 and *Schneider*, 717 F.3d at 771)).

Crews' reasoned recommendation properly applied binding Tenth Circuit precedent, and properly dismissed Plaintiff's claims, it should be adopted.[4]

## ARGUMENT

### I. Causation and Deliberate Indifference Are Necessary Elements of Any § 1983 Claim Against a Municipality

A plaintiff asserting a claim against a municipality under 42 U.S.C. § 1983 must allege facts showing that (1) they suffered an underlying violation of their constitutional rights in the case at hand; and (2) a municipal policy or custom was the "moving force" behind the constitutional deprivation. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (quoting *Monell,* 436 U.S. at 673); *Myers v. Ok. Cty. Bd. Of Cty. Cmmrs.*, 151 F.3d 1313, 1320 (10th Cir. 1998). Under the second prong, municipal liability can only attach if the plaintiff proves the existence of *each* of the following three elements: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction,* 717 F.3d 760, 769 (10th Cir. 2013). In making her arguments here, Plaintiff expressly asks this Court to disregard not one, but two of these seminal elements for municipal liability, as articulated by the Tenth Circuit. *Compare* (Doc. #65 at 9-10) *with Schneider*, 717 F.3d at 769. Plaintiff cites no case from within the Tenth Circuit that conceivably supports her position in the abstract, let alone as applied to her allegations here.

While Plaintiff argues she need not establish deliberate indifference to support a ratification claim, she relies entirely on *Trujillo* – a single unreported case in this District – for that point. (Doc. #65, at 9). The court in *Trujillo*, however, never applied a ratification theory to the claims,

---

[4] Finn died on or about January 16, 2021, due to causes unrelated to this incident. To date, Plaintiff has identified no person who now stands in his shoes in this lawsuit, or otherwise asserts an independent claim. Plaintiff has identified no heir, next of kin, relative, or any other person with a relationship to Finn.

4

and is thus silent on the point Plaintiff contends it stands for. Further, *Trujillo*'s statement that deliberate indifference need not be proved for a policy/custom theory is at odds with various other decisions on this point. *See, e.g., Cacioppo v. Town of* Vail, 528 F. App'x 929, 931 (10th Cir. July 8, 2013) (offending policy or custom must be "enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."); *Estate of Martinez v. Taylor*, 176 F. Supp.3d 1217, 1230 (D. Colo. 2016) (plaintiff asserting *Monell* claim must allege "(1) an official policy or custom; (2) [causation]; *and* (3) *deliberate indifference* on the part of the municipality") (emphasis added).

On the contrary, the Tenth Circuit has established that deliberate indifference is a prerequisite for all municipal liability claims, including ratification. *Schneider*, 717 F.3d at 775 ("The individual defendants were not deliberately indifferent, so judgment in favor of the City on a claim predicated on their decisions also was appropriate") (citing *Brown*, 520 U.S. at 415-16)). Plaintiff's Objection should be overruled on this basis as well.

## II. Plaintiff's Ratification Claim Was Properly Dismissed

Plaintiff's Objection is primarily devoted to arguing the validity of her ratification claim. These arguments are unavailing for a host of reasons.

### A. "[B]asic principles of linear time" preclude Plaintiff's ratification claim as a matter of law

Plaintiff's claims against Denver – including the allegations pertaining to investigator Iriart and the allegedly deficient investigation in this case – are based on events which post-date the incident in question. *See* First Amended Cmplt. ("FAC") at ¶¶ 47-105; 116-122 (Doc. No. 28-1). This necessarily precludes the necessary finding of causation that Plaintiff must obtain in order to prevail in this lawsuit.

The Tenth Circuit has routinely rejected Plaintiff's asserted theory of liability. "[B]asic principals of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1286 (10th Cir. 2019) (quoting *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (emphasis in original)); *Lynch v. Bd. of Cty. Comm'rs. of Musk. Cty.*, 786 F. App'x 774, 787 (10th Cir. 2019) (dismissing claim for failure to investigate and/or discipline on basis of same).[5] Put differently, "[f]ailing to adequately investigate or punish does not count as ratification." *Lynch,* 786 F. App'x at 787 (citing *Bryson v. City of Ok. City*, 627 F.3d 784 (10th Cir. 2010)); *see also Butler v. City of Norman*, 992 F.2d 1053, 1055-56 (10th Cir. 1993) ("[I]n this case an isolated incident even coupled with a failure to discipline is inadequate to support a finding of an affirmative link between the actions of the arresting officers and [Defendant]"); *Dempsey v. City of Baldwin*, 143 F. App'x 976, 986 (10th Cir. 2005).

In her Objection, Plaintiff disregards Tenth Circuit precedent and argues she need not prove causation to support a ratification claim. (Doc. #65 at 9 (citing *Waller*, 932 F.3d at 1289)).  Again, the Tenth Circuit expressly disagrees. *Dempsey,* 143 F. App'x at 986 (for liability, "the ratification must be the moving force, or cause, of the alleged constitutional violation.") (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)); *see also Lynch,* 768 F. App'x at 777; *Cordova,* 569 F.3d at 1194. And relying on that precedent, this District has been even more specific regarding this very issue in the ratification context.  As Judge Martinez recently held – again looking to

---

[5] In certain circumstances, a post-incident "cover-up" could be considered as part of a policy or custom for purposes of a *subsequent* violation, or circumstantial evidence of a deficient policy or custom, but these arguments are not at issue here. Plaintiff neither argues this is the case here, nor has she pled any facts suggesting the same. *See, e.g., Cordova*, 569 F.3d at 1194; *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1207 n. 9 (D. Colo. 2020).

"principles of linear time" to inform the analysis – *"[j]ust as a cover-up cannot be the cause of the actions being covered up, an inadequate investigation cannot be the cause of the actions being investigated." Valdez v. Motyka*, 15-cv-0109, 2019 WL 6838959, at *6 (D. Colo. Dec. 16, 2019) (emphasis added) (citations omitted); *see also Morris v. Opsahl*, No. 12-cv-2134, 2014 WL 675419, at *8 (D. Colo. Feb. 21, 2014); *Trujillo v. Campbell*, No. 09-cv-3011, 2012 WL 3609747, at *8 (D. Colo. Aug. 22, 2012). And only a few months ago, this court explained:

> Ratification can be found when the employees were given authority for the action, subject to the review and approval of a final policymaker, and when the final policymaker approves of the decision and the basis for the decision (citations omitted). ***The final decisionmakers' approval must precede the violative action, and the Tenth Circuit has rejected ratification based on conduct after the violation has occurred.***

*Estate of Burnett v. City of Colo. Springs*, ---F.Supp.3d---, No. 21-cv-1708, WJM-MDB, at **12-13 (D. Colo. July 22, 2022) (dismissing ratification claim because "post-incident investigation concluding that defendant officers had followed appropriate policy and procedures cannot plausibly form the basis of municipal liability on a ratification theory"); *see also Coffee v. City of Ok. City*, 2009 WL 10669175, at **5-6 (W.D. Ok. Aug. 4, 2009) (following *Dempsey* and *Cordova*).

Plaintiff's Objection offers no reason to depart from this principle and points to no decision within the Tenth Circuit in which analogous post-incident allegations were found actionable. Instead, Plaintiff relies on three cases, *City of St. Louis v. Praprotnik* (485 U.S. 112)*, Hobart* (a 2013 Southern District of Texas Decision)[6], and *Au Hoon* (an unpuhlished Ninth Circuit decision

---

[6] Plaintiff did not mention *Praprotnik* in her briefing regarding Denver's motion to dismiss, and the case was thus not before Judge Crews (Doc. # 34). Because it was not previously briefed, Plaintiff is not entitled a *de novo* review of any arguments based on *Praprotnik. See, e.g., Salgado-Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp.2d 151, 164 (D. P.R. 2008) (citing *Borden v. Sec. of Health & Human Svcs.,* 836 F.2d 4, 6 (1st Cir. 1987)).

from 1991). *See* (Doc. #65 (citing *Hobart v. City of Stafford*, 916 F.Supp.2d 783, 793 (S.D. Tex. 2013) and *Au Hoon v. City of Honolulu*, No. 89- 16305, 1991 WL 1677, at *4 (9th Cir. Jan. 10, 1991)). None of these cases supports Plaintiff's position. This Circuit and District have considered and expressly rejected the application of *Praprotnik* that Plaintiff seeks here.  *See, e.g., Dempsey,* 143 F. App'x at 986 (for liability, "the ratification must be the moving force, or cause, of the alleged constitutional violation.") (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)); *Valdez*, 2019 WL at 6838959, at *6 (alleged post-incident ratification "cannot satisfy the municipal liability standard").

*Hobart* is no more helpful.  There, the Southern District of Texas noted that it "doubt[ed] the propriety of holding municipalities liable on a ratification theory where the constitutional violation is excessive use of force," but "conclude[d] that [the Fifth] Circuit apparently tolerates such claims." *Id.* at 795. The court, however, went on to hold that a municipality "is not liable under the ratification theory where a Police Chief accepts his officers' version of events, so long as ***that version*** did not show that the deputies' actions were manifestly indefensible." *Id. (*internal quotation marks and citation omitted) (emphasis added). The court further noted: "the ratification theory applies only to ***extreme*** factual scenarios." *Id.* (emphasis added). *Hobart* would thus *not* suggest that Plaintiff has pled a colorable ratification claim here, when there is no allegation whatsoever that the eventual decision to exonerate Gentempo was *not* based on Gentempo's own version of events, nor is it adequately "extreme" to support the application of this concept. And

---

Even in the event the Court considers *Praprotnik*, it has no bearing here, as the Tenth Circuit precedent on this very topic that Denver relies on was all decided since – and is not precluded by *Praprotnik. See, e.g., Lynch,* 768 F. App'x at 777; *Cordova,* 569 F.3d at 1194*.* Further, both the Tenth Circuit and this District have considered the dicta in *Praprotnik* and found it did not act to obviate the causation requirement for ratification. *See, e.g., Dempsey,* 143 F. App'x at 986; *Valdez,* 2019 WL at 6838959, at *6.

while *Au Hoon* – an unpublished Ninth Circuit decided more than 30 years ago – found causation need not be present, a court within the Tenth Circuit has previously explained why *Au Hoon* does not apply here (applying certain of the same precedent above). *See Coffee v. City of Ok. City*, 2009 WL 10669175, at **5-6 (W.D. Ok. Aug. 4, 2009) (rejecting *Au Hoon* and applying law from *Monell, Dempsey,* and *Cordova* instead) (additional citations omitted).

Most importantly, even if they did support Plaintiff's position, neither *Hobart* nor *Au Hoon* should be substituted for well-established precedent within the Tenth Circuit or District of Colorado.[7] Plaintiff offers no argument for why the law within this Circuit should be ignored, nor is any such basis otherwise apparent. Judge Crews' determination here should thus be adopted.

    B.   Plaintiff Failed to Plead Adequate Facts Supporting a Colorable Ratification Claim

Even if Plaintiff could satisfy the requirements of causation and deliberate indifference, she has not pled a viable ratification claim.  A ratification claim requires "that the subordinate's actions – *and the basis [sic] for them* – were ratified by final policymakers." *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1207 (D. Colo. 2020) (citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (emphasis added)); *see also Valdez*, 2019 WL 6838959, at *5 (emphasizing requirement that city not only ratify conduct, but also "the basis for it") (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)); *Thomas v. City of Aurora*, 2021 WL 5810742, at *18 (finding complaint deficient for not adequately identifying approval of the "basis" for the action in question).

---

[7] Plaintiff does not cite a single case within the Tenth Circuit in which a court found the existence of a colorable ratification claim on the basis of a post-incident failure to discipline.  Nor did Plaintiff's Response in Opposition to Denver's Motion to Dismiss (Doc. #34 at 7) (collecting cases where ratification was *not* present).

Here, Plaintiff pleads no facts indicating any DSD policymaker specifically approved of Gentempo's conduct, let alone its "basis". In fact, Plaintiff's own allegations preclude such a finding. Plaintiff acknowledges the decision to exonerate Gentempo was not based on an affirmative finding that he acted properly, but rather "insufficient evidence to either prove or disprove the allegation[s]." Doc. #28-1 at ¶ 69. This is not ratification. "Failing to adequately investigate or punish does not count as ratification." *Lynch v. Bd. of Cty. Comm'rs. of Musk. Cty.*, 786 F. App'x 774, 787 (10th Cir. 2019); *Erickson*, 489 F. Supp. 3d at 1207 ("Ratification is more than acquiescence, and a mere failure to discipline does not amount to ratification.") (quoting *Jack v. Cty. of Stanislaus*, 2017 WL 4123930, at *7 (E.D. Cal. Sept. 15, 2017)). Again, Judge Crews' recommendation should be adopted because Plaintiff has failed to plead facts sufficient to support this claim.

### III.     Plaintiff's Failure-to-Train Claim was Properly Dismissed

In its motion to dismiss, Denver argued Plaintiff had pled insufficient facts to support a failure-to-train theory. Although the failure of a municipality to train its employees may support a *Monell* claim, such a theory represents the most "tenuous" sort of municipal liability under § 1983. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). In order to state a failure-to-train claim, a plaintiff must set forth competent factual allegations that: (1) the training provided was inadequate; (2) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (3) there is a direct causal link between the constitutional deprivation and the inadequate training. *See, e.g., Trujillo v. Campbell*, No. 09-03011-CMA-KLM, 2012 WL 3609747, at *6 (D. Colo. Aug. 22, 2012). To establish these elements, "a plaintiff must identify a specific deficiency that was obvious and closely related to his injury." *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010) (quoting *Lopez v.*

10

*LeMaster,* 172 F.3d 756, 760 (10th Cir. 1999) (internal citations omitted)). As Judge Crews determined, Plaintiff's allegations here could not establish the requisite elements.

As an initial matter, the only training failure apparently alleged by Plaintiff pertains specifically to "the use of force against allegedly spitting arrestees." (Doc. #28-1 at ¶¶ 11, 127, 129, 145). And the only *facts* Plaintiff now points to in support of this conclusion includes Gentempo's alleged statement that "there's nothing in our policy that will tell you what exactly to do when you're being spit on." (Doc. #65 at 12-13 (citing Doc. #28-1 at ¶¶ 107-08)). This is unavailing, however, because the statement of a single employee as to his training or lack thereof cannot give rise to a failure-to-train claim. *See City of Canton*, 489 U.S. 378, 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Judge Crews' Recommendation properly applies *Canton* here and should be adopted for this reason. (Doc. #59 at 11).

Moreover, Plaintiff does not mention any incident outside the instant case involving a "spitting arrestee" or any other use of force by a DSD officer in response to a spitting incident. *See generally* FAC.[8] Plaintiff also fails to indicate what Denver's existing training programs entail and she identifies no specific training that, if provided, would have prevented Finn's alleged harms. Absent such facts, Plaintiff's failure-to-train claim cannot proceed. *See, e.g., Porro,* 624 F.3d at 1328 (quoting *Lopez,* 172 F.3d at 760); *see also Bark v. Chacon*, No. 10-cv-01570, 2011 WL

---

[8] Plaintiff does not appear to challenge the dismissal of his failure-to-train claim based on any "pattern of violations" theory. *De novo* review would thus be waived as to any such argument. *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").

1884691, at *3 (D. Colo. May 18, 2011) (plaintiff could not maintain failure-to-train claim when he failed to set forth "specific deficiencies in training and supervision, or explain how the incident . . . could have been avoided with different or better training and supervision"); *Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1207-08 (D. Colo. 2020).

Further, to the extent Plaintiff attempts to base his failure-to-train claim on a "single-incident" theory, this claim fares no better. While "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train," in certain cases such a claim may be asserted upon a "single incident" of unconstitutional activity. *Connick*, 563 U.S. at 62. In these cases, the violation must be "*a highly predictable consequence*" of the absence of the particular training alleged. *Id.* at 64. Put differently, there exists the chance, "however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* (citing *City of Canton*, 489 U.S. at 390 n.10)). Liability in such cases can only attach in the "narrow range of circumstances" from which constitutional violations are a "highly predictable consequence" of the alleged training failure(s). *Connick v. Thompson*, 563 U.S. 51, 63-4 (2011) (quoting *Commrs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)). As aptly determined by Judge Crews, no such circumstance is present here.

Here, despite alleging no prior spitting incident, Plaintiff asks this Court to infer the predictability of spitting incidents because DSD equips its employees with "spit socks." (Doc. # 34 at 9; Doc. #65 at 14). But as previously argued, the standard is not merely the likelihood of detainees spitting at officers, it is rather whether there exists a training *deficiency* which creates a "plainly obvious" risk to spitting detainees' constitutional rights, that was deliberately not addressed by the municipality. *See Brown,* 520 U.S. at 413-14; *see also Connick,* 563 U.S. at 71

("To prove deliberate indifference . . .[plaintiff] had to show that it was *so* predictable that failing to train the prosecutors amounted to *conscious disregard* for defendants' *[constitutional]* rights.") (emphasis in original). Plaintiff here pleads no facts indicating any DSD policymaker was aware of an obvious risk to the constitutional rights of spitting inmates – or any other inmates for that matter – yet failed to address such risk.

On the contrary, Plaintiff's own allegations regarding "spit socks" preclude the requisite finding. While the First Amended Complaint (Doc. No. 28-1) points to no training program that could have prevented the alleged incident, Plaintiff acknowledges that other DSD officers who responded to this incident did exactly what well-trained officers should do. Plaintiff argues that if Gentempo were better trained, he would have known to "simply step[] away and retrieve[] a spit sock" instead of punching Finn in the face. (Doc. #34 at 9; Doc. #65 at 14). Plaintiff admits, however, that multiple responding officers did exactly that – placed a spit sock on Finn in accordance with the very training Plaintiff now contends was lacking. *Compare* Doc. #65 at 14 ("[W]ith constitutionally adequate training, [] Gentempo could have simply stepped away and retrieved a spit sock") *with* FAC at ¶ 36 (Doc. No. 28-1) (alleging "*other deputies placed a spit sock over Mr. Finn's head*") (emphasis added). Given Plaintiff's admissions that DSD employs "spit socks" for spitting detainees, and that multiple DSD officers utilized those spit socks during this very incident, Gentempo's unilateral failure to do the same cannot support a claim against Denver. *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Particularly in light of the additional scrutiny attached to failure-to-train claims recognized by Judge Crews (Doc. #59 at 11), Plaintiff has not adequately pled the existence of deliberate indifference.

Finally, Plaintiff never alleged that DSD officers are generally untrained in defensive tactics or how to respond to assaults, including assaults by *non-spitting* arrestees. But an officer who is spit on, like one who is punched, has been assaulted. C.R.S. 18-3-203(1)(h). And it goes without saying that upon being assaulted – by bodily fluids or otherwise – there are various constitutionally sound ways for an officer to respond (i.e. defensive tactics, certain uses of force). Plaintiff, however, never pleads how DSD's existing training programs are rendered constitutionally inadequate simply because an officer has been attacked with saliva, rather than a fist or foot. *See Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (plaintiff asserting failure-to-train claim "must 'identify a specific deficiency' that was obvious and 'closely related' to his injury, so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury.") (quoting *City of Canton*, 489 U.S. at 385) (internal citation omitted); *Bark v. Chacon*, No. 10-cv-01570, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011). Absent such allegations, Plaintiff's failure-to-train claim should also be dismissed for this reason.

## IV. Plaintiff Should Not be Afforded Leave to Amend

In a footnote, Plaintiff cursorily notes that should her Objection be overruled, she should be granted leave to amend. (Doc. # 65 at 15 n.6). Because this issue is not properly before the Court, and since there is no basis for leave to amend in this case and any amendment would thus be futile, this request should be denied and the dismissal of this lawsuit should be with prejudice.

Leave to amend is appropriately sought in a separate motion complying with federal and local rules. *See* Fed. R. Civ. P. 15(a)(2); *see also* D.C. COLO. LCivR15.1 (requiring proposed pleading with redlining). Here, having neither filed a motion to amend under Rule 15 nor complied with this District's requirement to provide a proposed pleading, this request should be denied.

Moreover, Plaintiff failed to seek such leave during the course of discovery, nor does Plaintiff articulate a single fact or reason as to why such leave should be granted in this case. Particularly because Plaintiff's ultimate theory of liability based on a post-incident investigation is precluded as a matter of law by Tenth Circuit precedent, leave to amend must be denied.

## CONCLUSION

For the reasons articulated by Judge Crews (Doc. #59), together with those set forth above and as previously asserted in Denver's motion to dismiss (Doc. # 32) and reply in support (Doc. #36), Plaintiff's claims against Denver should be dismissed.

DATED this 27th day of October, 2022.

          Respectfully submitted,

          By: */s/ Jonathan Cooper*
          Jonathan Cooper, Assistant City Attorney
          Denver City Attorney's Office
          Civil Litigation Section
          201 West Colfax Ave., Dept. 1108
          Denver, CO 80202
          Telephone: (720) 913-3100
          Facsimile: (720) 913-3155
          E-mail: jonathan.cooper@denvergov.org
          *Counsel for the City and County of Denver*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2022, the foregoing **CITY AND COUNTY OF DENVER'S RESPONSE TO PLAINTIFF'S OBJECTION TO RECOMMENDATION OF DISMISSAL** was filed with the Clerk of the Court using the CM/ECF system, which will serve the following:

Benjamin Hartford
The Law Office of Benjamin Hartford
ben@bhartfordlaw.com

Nicholas A. Lutz
Matthew Cron
Omeed Azmoudeh
Rathod Mohamedbhai, LLC
nl@rmlawyers.com
mc@rmlawyers.com
oa@rmlawyers.com
*Counsel for Plaintiff*

Eric M. Ziporin
Tiffany Toomey
SGR, LLC
eziporin@sgrllc.com
ttoomey@sgrllc.com
*Counsel for Defendant Jason Gentempo*

                                                 *s/ Jonathan Cooper*
                                                 Denver City Attorney's Office