IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-02160-CNS-SKC

MELISSA R. SCHWARTZ, personal representative for the Estate of Serafin Finn,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality and
DEPUTY JASON GENTEMPO, in his individual capacity,

    Defendants.

---

## ORDER

---

Before the Court is the Estate of Serafin Finn's (the "Estate's") Objection (ECF No. 65) to the United States Magistrate Judge's Recommendation (ECF No. 59) that the Court should grant in part and deny in part the City and County of Denver's (the "City's") Motion to Dismiss (ECF No. 32). For the reasons set forth below, the Estate's Objection is SUSTAINED in part and OVERRULED in part. The Magistrate Judge's Recommendation is AFFIRMED in part, ADOPTED in part, and DENIED in part. Accordingly, the City's Motion to Dismiss (ECF No. 32) is GRANTED in part and DENIED in part.

### I. BACKGROUND

The allegations in the Estate's Amended Complaint are summarized in the Magistrate Judge's Recommendation (*See* ECF No. 59).[1] After summarizing the Amended Complaint's

---

[1] The Court incorporates the Magistrate Judge's summary of the Amended Complaint's allegations into its Order.

1

allegations, the Magistrate Judge discussed whether the Amended Complaint plausibly alleged a "policy or custom which caused the violation of [Mr. Finn's] constitutional rights" (ECF No. 59 at 6).[2] The Magistrate Judge recommended dismissing the Estate's 42 U.S.C. § 1983 municipal liability claim on the grounds that the Amended Complaint failed to plausibly allege the City had a municipal policy or custom that caused the violation of Mr. Finn's constitutional rights (*See, e.g., id.* at 6, 8, 12). The Estate timely filed its Objection to the Magistrate Judge Recommendation (ECF No. 65).[3] The City timely filed its Response (ECF No. 66).[4]

## II. STANDARD OF REVIEW AND LEGAL STANDARD

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the

---

[2] The Magistrate Judge noted that the City did not argue in its dismissal motion that the Estate "fail[ed] to plausibly allege a constitutional violation" of Mr. Finn's rights by Defendant Deputy Jason Gentempo (*Id.* at 6). In his Recommendation, the Magistrate Judge also considered the City's argument that Colorado's survival statute, C.R.S. § 13-20-101, precluded recovery for non-economic damages in this action (*Id.* at 12). The Magistrate Judge's recommendation that the Court should deny the dismissal motion "insofar as it seeks declaratory relief" regarding "Plaintiff's available damages" is not the subject of the Estate's Objection (*Id.* at 12-13; *see also* ECF Nos. 65 at 2 n.1).

[3] As the Estate notes, it originally pleaded three theories of municipal liability, but its Objection focuses "on the revival" of only two municipal liability theories: the City's ratification of Deputy Gentempo's conduct, and the City's failure to train (ECF No. 65 at 2 n.2, 3-4, 6-7, 12).

[4] The Estate filed a Reply brief, which the Court struck on the grounds that Federal Rule of Civil Procedure 72(b) does not contemplate the filing of a reply (*See* ECF No. 68).

2

[recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation omitted). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

The Court has reviewed the Amended Complaint, the City's Motion to Dismiss, the Magistrate Judge's Recommendation, the Estate's Objection, the City's Response, and the relevant

3

legal authority. The Court addresses the arguments in the Estate's Objection in turn, sustaining the Objection in part and overruling the Objection in part. Before doing so, the Court briefly sets forth the legal standard governing municipal liability claims under 42 U.S.C. § 1983.

### A. Legal Standard for Municipal Liability Claims

A municipality faces § 1983 liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), where an alleged municipal policy or custom causes a plaintiff's constitutional injury, and the policy or custom was "enacted or maintained with deliberate indifference" to an almost inevitable constitutional injury. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citation omitted); *see also id.* (setting forth "official policy or custom," "causation," and "state of mind" elements for § 1983 municipal liability claims). "It is axiomatic that—regardless of the form a policy or custom takes—a plaintiff must show the municipality's practice or custom caused the alleged constitutional injury." *Rogacki v. Jefferson Cnty.*, No. 1:21-cv-02281-CNS-KLM, 2022 WL 16551336, at *11 (D. Colo. Oct. 31, 2022) (citation omitted) (emphasis omitted).

Regarding the "official policy or custom" element, the plaintiff may show a policy or custom exists where the municipality maintains an alleged:

- Formal regulation or policy statement;

- An informal custom amounting to "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law";

- Decisions of employees with final policymaking authority;

- Ratification by final policymakers of the decisions of subordinates to whom authority was delegated subject to the policymakers' "review and approval";

- or the "failure to adequately train or supervise employees," as long as the failure results from "deliberate indifference" to the plaintiff's injuries.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations and alterations omitted). The "official policy" requirement is intended to distinguish "acts of the municipality from acts of employees of the municipality," making clear that municipal liability is limited to actions "for which the municipality is actually responsible." *Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 932 (10th Cir. 2013) (quotations omitted).

As for the causation element, a plaintiff must allege that "a direct causal link between the policy or custom and the injury alleged." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quotation omitted); *see also Bryson*, 627 F.3d at 788 (stating that to establish municipal liability a plaintiff must allege a "direct causal link" between the municipal policy or custom and the alleged injury); *Schneider*, 717 F.3d at 770. Essentially, a municipality is not liable for the constitutional violations of its employees "simply because such a violation has occurred; a policy or custom must have actually caused that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (citation omitted).

Finally, for the requisite state of mind showing, a plaintiff must allege that the municipal action was taken with "'deliberate indifference' as to its known or obvious consequences." *Schneider*, 717 F.3d at 770 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). This standard is satisfied where the plaintiff adequately alleges that a municipality has "actual or constructive notice that its action or failure to act is substantially certain" to result in a constitutional violation, and it "consciously or deliberately" disregards the risk of harm. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quotation omitted). While "notice" is often shown by alleging a "pattern of tortious conduct," a municipality's deliberate

indifference may also be demonstrated if "a violation of federal rights is a highly predictable or plainly obvious consequence of a [the] municipality's action or inaction." *Cacioppo*, 528 F. App'x at 932 (citing *Schneider*, 717 F.3d at 771).

### B. Municipal Liability & Ratification

The Estate argues that the Magistrate Judge erred in recommending dismissal of its municipal liability claim because "post-conduct ratification is a viable *Monell* theory," and because it pleaded sufficient factual content to allege the City ratified Deputy Gentempo's "assault of Mr. Finn" (ECF No. 65 at 7 (capitalization omitted)). The City argues that the Estate has not adequately alleged facts satisfying the causation requirement to set forth a ratification-based municipal liability claim (*See* ECF No. 66 at 5). The Court agrees with the City.

First, the Estate argues that post-ratification theories are viable because the "causation requirement" for municipal liability claims should not bar "after-the-fact" ratification theories (ECF No. 65 at 9). In doing so, the Estate contends that the Magistrate Judge erred in recommending dismissal of its municipal liability claim based on the City's alleged ratification of Deputy Gentempo's conduct after his alleged assault of Mr. Finn (*Id.* at 7, 9). Regarding ratification theories and the causation requirement imposed on municipal liability claims, the Tenth Circuit has observed that "basic principals of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow *caused* that violation." *Cordova*, 569 F.3d at 1194; *see also Waller*, 932 F.3d at 1289 (quoting *Cordova*'s linearity principle in discussion of "failure-to-investigate" claim's plausibility). Courts have applied this same causation principle to ratification-based municipal liability claims. *See Dempsey v. City of Baldwin*, 143 F. App'x 976, 986 (10th Cir. 2005) ("[T]he ratification *must* be the moving force, or cause, of the alleged

6

constitutional violation." (citation omitted)); *see also Bryson*, 627 F.3d at 790 (concluding that ratification theory was not viable where a city "was not even aware of [a police department employee's] unconstitutional actions with respect to [p]laintiff" and "no [city] decisionmakers learned of any defects" in plaintiff's case until defects "came to light" in post-conduct investigation); *Est. of Burnett v. City of Colorado Springs*, No. 21-CV-1708-WJM-MDB, 2022 WL 2904705, at *12 (D. Colo. July 22, 2022) ("The final decisionmakers' approval must precede the violative action, and the Tenth Circuit has rejected ratification based on conduct after the violation has occurred." (citing *Cordova*, 569 F.3d at 1194)). The Court finds the reasoning of these cases persuasive.[5] Accordingly, the Court concludes that the Estate's municipal liability claim based on the City's alleged post-conduct ratification is subject to the causation requirement.[6]

---

[5] The Estate reads *Waller* and *Bryson* differently, contending these cases support the proposition that the ratification inquiry asks "whether the municipality offered any after-the-fact approval of the unconstitutional conduct" (ECF No. 65 at 8). But the Estate's characterization of this inquiry does not change the bedrock principle that a municipality's ratification must cause the alleged constitutional injury. *See Waller*, 932 F.3d at 1289. Similarly, *Bryson*'s comment that no record evidence "suggest[ed]" that the city "ratified" an employee's conduct "once [it] learned" of her actions, does not disturb its preceding determination that ratification liability could not attach because the city "was not even aware" of the employee's "unconstitutional actions." *Bryson*, 627 F.3d at 790. And unlike *Burnett*, the remaining district court cases cited by the Estate fail to meaningfully contend with *Bryson*, *Waller*, or *Corvoda* (ECF No. 65 at 8).

[6] The Estate cites several cases in support of its argument that the Magistrate Judge erred in recommending dismissal of its post-conduct ratification theory of municipal liability (*See* ECF No. 65 at 7-11). These cases fail to persuade that the Estate's municipal liability claim based on its post-conduct ratification theory survives dismissal. For instance, the general description of ratification-based municipal liability theories in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), cannot be read so broadly as to support the viability of the Estate's *post-conduct* ratification liability theory. *Cf. id.* ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). The Tenth Circuit has interpreted *Praprotnik* as imposing precisely the causation requirement on ratification theories of municipal liability that the Estate urges the Court to disregard (*See, e.g.*, ECF No. 65 at 10). *See also Dempsey*, 143 F. App'x at 986 ("The final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification *must be the moving force, or cause*, of the alleged constitutional violation." (citing *Praprotnik*, 485 U.S at 127) (emphasis added)); *see also Cordova*, 569 F.3d at 1194. And the Estate's citations to "courts in other circuits," arriving at contrary conclusions, do not absolve the Court of its obligation to follow Tenth Circuit precedent (ECF No. 65 at 8-10). *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits." (citations omitted)).

Second, the Court agrees with the City that the Estate has failed to plausibly allege—as it must—that the City's ratification of Deputy Gentempo's conduct caused Mr. Finn's constitutional injury (*See* ECF No. 66 at 5). *See, e.g., Cordova*, 569 F.3d at 1194; *Dempsey*, 143 F. App'x at 986. As the Magistrate Judge explained, the Amended Complaint alleges that the City's ratification of Deputy Gentempo's conduct occurred *after* he allegedly assaulted Mr. Finn (*See* ECF No. 59 at 10-11; *see also* ECF No. 28-1 at 9-11 ¶¶ 60-62, 65, 70-71, 74-75).[7] Accordingly, and contrary to the Estate's argument, the Magistrate Judge did not err in recommending dismissal of the Estate's municipal liability claim based on a theory of post-conduct ratification (*See* ECF No. 65 at 11-12). The Estate's objection to this recommendation is overruled.

C. **Failure to Train**

The Estate argues that the Magistrate Judge erred in recommending dismissal of its municipal liability claim based on the City's alleged failure to train because the Amended Complaint sufficiently alleges that the City provided "no training whatsoever regarding situations involving spitting arrestees" (ECF No. 65 at 12-13 (emphasis omitted)). The City urges affirmance because the Estate has only alleged facts related to Deputy Gentempo's statement regarding his training, which cannot sustain a plausible failure-to-train claim (ECF No. 66 at 11). The Court agrees with the Estate that the Magistrate Judge erred in recommending dismissal of its municipal liability claim based on the City's alleged failure to train.

---

[7] The Magistrate Judge specifically concluded that the "ratification theory" failed for the "same reasons" its other theories of municipal liability failed: the City's alleged misconduct occurred after the alleged March 2019 assault (ECF No. 59 at 11; *see also id.* at 10, 10 n.4). The Magistrate Judge further concluded that the Amended Complaint's ratification theory could not "properly form a basis for deliberate indifference" (ECF No. 59 at 11). Because the Estate is required to satisfy all three elements of municipality liability and, for the reasons set forth above, has failed to allege facts satisfying the causation element, the Court need not address the Estate's arguments regarding its obligation to satisfy the element—or the Magistrate Judge's deliberate indifference conclusions—for its ratification-based municipal liability claim (*See, e.g.,* ECF No. 65 at 9).

8

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted)). To prevail under this standard, a plaintiff must allege that the "need for more or different training was so obvious, and the inadequacy so likely to result" in the alleged constitutional violation, that it reasonably can be said to have been deliberately indifferent to the need for additional training." *Porro*, 624 F.3d at 1328 (quotations omitted) (alterations removed); *see also Lynch v. Bd. of Cnty. Commissioners of Muskogee Cnty., Oklahoma*, 786 F. App'x 774, 785 (10th Cir. 2019) ("[I]t is not enough for a plaintiff to show 'general deficiencies' in training." (citations omitted)). Accordingly, a complaint must identify an obvious and "specific deficiency" that is "closely related" to the plaintiff's injury, such that the municipality's policy of failing to train was "deliberately indifferent" to the plaintiff's rights and the "moving force" behind his injury." *Porro*, 624 F.3d at 1328 (quotations omitted). *See also City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ("[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible.").

The Estate has pleaded sufficient factual content to survive dismissal of its failure-to-train claim. As the Estate contends, the Amended Complaint identifies a *specific* failure in Deputy Gentempo's training: he, as he allegedly said himself, was not trained on "the appropriate use of force against allegedly spitting arrestees" (ECF No. 65 at 12 (citations omitted)); ECF No. 28-1 at 16 ¶ 107). *See also Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1049 (10th Cir. 2022) (concluding that at summary judgment stage a reasonable jury could find that county had policies or customs of "failing to medically train jail employees" where the record showed "multiple

employees testified that they received no meaningful medical training").[8] Alleging that the City failed to provide training regarding the appropriate use of force against spitting detainees is neither "conclusory" nor "generalized"—the Amended Complaint specifies the exact factual circumstance about which the City failed to provide any training. *Huff v. Reeves*, 996 F.3d 1082, 1093 (10th Cir. 2021) (citation omitted); *Cf. Lynch*, 786 F. App'x at 785 ("Inadequate training can amount to a municipal 'policy.'" (citation omitted)).

Moreover, the Court agrees with the Estate that this training deficiency is "closely related" to Mr. Finn's alleged injury (ECF No. 65 at 14 (quotations omitted). For instance, the Estate alleges that Mr. Finn's constitutional violation was a predictable result of the City's failure to train Deputy Gentempo, and that Deputy Gentempo stated that the City provided no policy or training documents regarding how to respond to spitting arrestees (*See* ECF No. 28-1 at 2, 16, 19 ¶¶ 11, 108, 130). Accepting the Amended Complaint's allegations as true and interpreting them in the light most favorable to the Estate, *see Mayfield*, 826 F.3d at 1255, the Amended Complaint sufficiently alleges that the inadequacy of the City's training was obvious and likely to result in Mr. Finn's constitutional injury, as well as that the predictability of Mr. Finn's injury could have been prevented by providing training regarding spitting arrestees. *See Porro*, 624 F.3d at 1328; *cf. Bark v. Chacon*, No. 10-CV-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18,

---

[8] The City and Magistrate Judge emphasize the Estate's allegation that Deputy Gentempo stated that the City provided no training regarding spitting arrestees as a basis for dismissing the Estate's failure-to-train claim (ECF Nos. 59 at 11, 66 at 11). Both rely on *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91 (1989), in support of the proposition that an officer's statements regarding the inadequacy of his own training disregards "other factors" that may have contributed to his alleged misconduct (ECF No. 59 at 11; *see also* ECF No. 66 at 11). But, as the Estate observes, the Magistrate Judge reads *Canton* too narrowly. Under *Canton*, a failure-to-train claim fails where "a *particular* officer may be unsatisfactorily trained [because that] officer's shortcomings may have resulted from [other] factors." 489 U.S. at 390–91 (emphasis added). However, as the Estate argues, the gravamen of Deputy Gentempo's statement is that the City provided no training or policy statements at all to any deputy, including Deputy Gentempo, regarding the use of force against spitting arrestees—not merely that Deputy Gentempo, standing alone, was "unsatisfactorily" trained (ECF No. 65 at 13; *see also* ECF No. 28-1 at 16 ¶ 108).

2011) (concluding plaintiff failed to allege plausible failure-to-train claim where he did not "explain how the [alleged] incidents . . . could have been avoided with different or better training"). Accordingly, reading the Amended Complaint in its entirety, *Chilcoat*, 41 F.4th at 1207, it is plausible that Mr. Finn's assault was a predictable and causally related outcome of the City's failure to provide Deputy Gentempo with *any* training regarding "what exactly to do" regarding spitting arrestees (ECF No. 28-1 at 16 ¶ 108; *see also id.* at 2-3, 16, 20 ¶¶ 11, 107, 133-34). Fundamentally, the Estate has alleged enough factual content for the Court to answer whether "the injury [would] have been avoided had [Deputy Gentempo] been trained under a program that was not deficient in the identified respect" in the affirmative. *Canton*, 489 U.S. at 391.

The City contends that affirmance is proper because the Estate "does not mention any incident outside the instant case" regarding spitting arrestees or any other officer's use of excessive force in similar "spitting incident[s]" (ECF No. 66 at 11). The Court agrees that the Amended Complaint contains no allegations regarding other incidents involving spitting arrestees. But the Estate is not *required* to allege the existence of similar incidents to survive the City's dismissal motion, especially where—as here—the alleged need for any specific training regarding the use of force against spitting arrestees was obvious. *See, e.g., Connick*, 563 U.S. at 63. Instead, the Court asks whether the Estate has adequately alleged that the City's failure to train its deputies, including Deputy Gentempo, was the moving force behind Deputy Gentempo's use of force against Mr. Finn. *See, e.g., Porro*, 624 F.3d at 1328. As discussed above, it has. *See, e.g.,* ECF No. 28-1 at 16, 19 ¶¶ 107, 128).

To be sure, as the City observes, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of

failure to train" (ECF No. 66 at 12). *Connick*, 563 U.S. at 62 (quotations omitted). But *Connick* continued: In some circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64; *see also Est. of Walter by & through Klodnicki v. Corr. Healthcare Companies, Inc.*, 232 F. Supp. 3d 1157, 1165 (D. Colo. 2017). The Court disagrees with the City that the Amended Complaint fails to allege that Deputy Gentempo's conduct was a highly predictable or obvious consequence of the City's alleged failure to provide any training regarding the appropriate use of force to be used against spitting arrestees (ECF No. 66 at 12; *but see* ECF No. 28-1 at 2, 16 ¶¶ 11, 107-08). *See also Connick*, 563 U.S. at 64. At the motion to dismiss stage, the City's alleged failure to provide *any* training regarding spitting arrestees is sufficient to demonstrate that the need for additional training was so obvious that the violation of Mr. Finn's constitution right was "likely to result from not providing it." *Schneider*, 717 F.3d at 774. *Cf. Porro*, 624 F.3d at 1329 (concluding "any reasonable fact finder" could not find deliberate indifference in failure-to-train claim where individual employee acted improperly "in defiance" of county policy that "*actively* sought to protect" the plaintiff's rights" (emphasis added)). Therefore, the Estate has satisfied the "deliberate indifference" requirement for municipal liability claim based on the City's alleged failure to train. The Magistrate Judge erred in concluding otherwise.[9]

---

[9] For these reasons, the Court agrees with the Estate that, as pleaded, the consequences of the City's failure to provide the specific training identified by the Estate were sufficiently obvious (ECF No. 65 at 13-14). In further support of its argument, the Estate alleges that the City had spit stocks available for deputies' use, and that deputies ultimately—after Deputy Gentempo had begun allegedly assaulting Mr. Finn—placed one over Mr. Finn's head (ECF No. 28-1 at 6 ¶ 36). This, according to the Estate, bolsters its contention that arrestees "recurringly spit" at officers (ECF No. 65 at 14). The City invites the Court to read this allegation *against* the Estate, contending that other deputies' use of the spit stocks is fatal to the Estate's failure-to-train claim (ECF No. 66 at 13). The Court declines the City's invitation. To do so would run afoul of the Court's obligation at this stage of litigation to draw all inferences in the light most favorable to the Estate. *See, e.g., Mayfield*, 826 F.3d at 1255. The Court rejects the City's argument that the Estate's claim is deficient on the grounds that it failed to allege that officers are "generally untrained in defensive tactics" for

\* \* \*

The Court is mindful that municipal liability is at its "most tenuous" when a claim is based on the municipality's alleged failure to train. *Connick*, 563 U.S. at 61. Nonetheless, in ruling on the Estate's Objection, the Court must situate the failure-to-train standard for municipal liability claims within Federal Rule of Civil Procedure 12(b)(6)'s dismissal framework. There is a "low bar for surviving a motion to dismiss." *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1034 (10th Cir. 2020). And, for the reasons set forth above, the Estate has pleaded sufficient factual content to survive dismissal of its municipal liability claim based on the City's alleged failure to train.

Of course, the Court does not know what "discovery may bring." *Chilcoat*, 41 F.4th at 1219. Well-pleaded claims may proceed even if "actual proof of [the alleged] facts is improbable." *Dias*, 567 F.3d at 1178 (quotation omitted). But that is not the Court's concern. "At the motion to dismiss stage, [the Court is] tasked with assessing plausibility, not proof." *Chilcoat*, 41 F.4th at 1219. And having assessed the plausibility of the Estate's failure-to-train claim, it survives the City's dismissal motion.

## IV. CONCLUSION

Consistent with the above analysis, the Estate's Objection is SUSTAINED in part and OVERRULED in part (ECF No. 65). The Magistrate Judge's Recommendation is AFFIRMED and ADOPTED in part, and DENIED in part (ECF No. 59). Accordingly, the City's Motion to Dismiss (ECF No. 32) is GRANTED in part and DENIED in part. The Estate's municipal liability

---

the same reason—given especially that the Court's analysis of the Estate's failure-to-train claim is guided by the specificity of the City's alleged training deficiencies (ECF No. 66 at 14). *See also Porro*, 624 F.3d at 1328.

claim against the City is DISMISSED WITH PREJUDICE to the extent that it is based on the ratification theory.[10]

DATED this 10th day of February 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[10] The Court agrees with the City that the Estate's municipal liability claim should be dismissed with prejudice because amendment would be futile, but *only* to the extent it is based on the City's alleged ratification of Deputy Gentempo's conduct (ECF No. 66 at 14-15). There is no way the Estate could allege that the City ratified Deputy Gentempo's conduct *before* it occurred, as the Estate is required to under Tenth Circuit law, and because it cannot cure this pleading deficiency granting leave to amend this theory of municipal liability would be futile. *See, e.g., Cordova*, 569 F.3d at 1194; *see also Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190–91 (10th Cir. 2014) (stating that dismissal with prejudice is appropriate where a complaint fails to state claim under Rule 12(b)(6) and granting leave to amend would be futile). For this reason, the Estate's municipal liability claim premised on this theory of liability is dismissed with prejudice.