**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02160-CNS-SKC

ESTATE OF SERAFIN FINN, by and through its personal representative Melissa R. Schwartz,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
DEPUTY JASON GENTEMPO, in his individual capacity,

    Defendants.

---

**DEFENDANT GENTEMPO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Defendant, **JASON GENTEMPO** ("Defendant Gentempo"), by his attorneys, **ERIC M. ZIPORIN** and **TIFFANY E. TOOMEY** of the law firm **SGR, LLC**, hereby files his Reply in Support of Summary Judgment ("Reply") to Plaintiff's Response to Defendant Gentempo's Motion for Summary Judgment [Doc. 93] ("Response") as follows:

### I.    INTRODUCTION

The Response fails to admit to facts and arguments that should have been admitted. Instead, given that Mr. Finn is now deceased, the Response almost exclusively relies on legal counsel's inferences and characterizations of the videos in an attempt to create disputes of material facts. As demonstrated below, Plaintiff has not met its burden of showing there is a genuine issue for trial as to two key facts: (1) that Finn continuously spit before a spit hood was applied; and (2) that Finn sustained any injury.

## II. RESPONSE CONCERNING DISPUTED FACTS ("RCDF")[1]

This Reply addresses only those facts that Plaintiff has denied or challenged.

9-10.   Plaintiff references two surveillance videos from inside the hallway of Denver Health Medical Center ("DHMC"). However, these videos only show Finn after already exiting the hospital room and do not show Finn inside of his hospital room during the rattling of his leg irons and handcuff restraints, the removal of his handcuffs from the gurney, re-cuffing him, or sitting him down in the wheelchair. [Response, **Exhibits 2-3**]. Plaintiff's denials must be supported by a specific reference to the record. [Civ. Practice Standard 7.1D(b)(4)]. As Plaintiff's citations do not support the facts it has alleged, these facts remain undisputed.

11.   Admit that **Exhibit 2** to the Response appears to show another individual throwing a blanket to Finn. Plaintiff makes no attempt at disputing the reasons why Defendant Gentempo placed Finn in a wheelchair.

14.    Plaintiff does not cite to any evidence supporting Finn not being highly agitated, yelling, or screaming, as the surveillance video does not contain any sound.  The sworn statements of the deputies confirm that these facts remain undisputed.

17.   Plaintiff relies on surveillance video alone which either does not clearly depict the facts argued by Plaintiff given the distance and quality of the camera[2], or does not show the facts

---

[1] In consideration of the 10-page limit for this Reply per Civ. Practice Standard 10.1(c)(2), Defendant Gentempo groups paragraphs together in order to respond, given Plaintiff has included 11 pages of facts. To the extent any facts or arguments are not addressed herein, Defendant Gentempo takes the position the Court can evaluate them on the basis of the Motion for Summary Judgment alone.

[2] Where video is unclear, inferences drawn from the video do not create a dispute. *Palacios v. Fortuna*, 61 F.4th 1248, 1262 (10th Cir. 2023) ("Plaintiff's argument that Mr. Harmening's declaration shows there are different factual inferences to be drawn from the videos, thus there are

at all. [Motion, **Exhibit I**]. Plaintiff cannot dispute that Deputy Gentempo closed the distance by moving toward Finn, given the video shows Deputy Gentempo moving toward Finn. [Response, **Exhibit 4** at 0:0:34]; [Motion, **Exhibit I** at 0:00:18]. Plaintiff admits the strike is obstructed by Deputy Siwakoti. Defendant Gentempo admits that Finn's head moves to his right after the strike but denies this indicates he was struck rather than moved his head out of the way, especially considering the lack of injury. [Response, **Exhibit 4** at 0:0:34]; [Motion, **Exhibit N** ¶¶ 3-9].

18. Plaintiff again relies solely on the surveillance video which does not support the facts as argued by Plaintiff. Plaintiff further argues events occurring out of sequence. Plaintiff argues that it would have been physically impossible to spit on Deputy Gentempo again – basing that on the claim that Finn could not have spit a second time *after* the blanket was over his face. However, the undisputed facts from both the videos and sworn testimony of the deputies establish that Finn spit three times *before* Defendant Gentempo covered Finn's face with either his hands or the blanket. [Motion, ¶ 17, 18, and 22]. Plaintiff cannot dispute that the purpose of Defendant Gentempo's force was to prevent further spitting rather than to cause him pain. The referenced testimony Plaintiff offers in support makes no mention of causing Finn pain. These facts remain undisputed.

19. Plaintiff again relies solely on the surveillance video which does not support the facts which allegedly create a dispute. Plaintiff cannot dispute which motion Defendant Gentempo made given he admits it is obstructed by Deputy Siwakoti. [Response, ¶ 17]. Plaintiff cannot dispute that Defendant Gentempo believed he took a different action that he later learned upon

---

material disputed facts, is misplaced."); *Id.* ("The universe of undisputed facts to consider on summary judgment excludes characterizations of facts and legal arguments.")

3

watching the video and cites to no evidence of the same. These facts remain undisputed.

20. Expert testimony is not required to assert that spit can transfer dangerous diseases. Plaintiff does not deny DSD's policy allows strikes in response to an assault and that spitting is an assault. These facts remain undisputed.

21. Plaintiff does not reference any evidence disputing Defendant Gentempo's assertion given his belief was based on Finn lacking injury rather than his memory of it. [Motion, ¶ 21]. There are no records connecting Finn's small bruise to his contact with Deputy Gentempo as opposed to his falling head-first into the ground. These facts remain undisputed.

22. Plaintiff again relies solely on the surveillance video which is unclear as to the facts alleged. Indeed, the video shows Defendant Gentempo using two hands, given Defendant Gentempo's right hand is seen on Finn as the wheelchair tumbles over, rather than a "powerful left hook". [Motion, **Exhibit I** at 0:0:22]. These facts remain undisputed.

23. Plaintiff again relies solely on the surveillance video which is unclear as to the facts alleged. In fact, the referenced video shows the wheelchair accidentally toppled over, as the deputies struggle to keep it upright for five seconds. [Motion, **Exhibit I** at 00:00:18-0:00:23]. These facts remain undisputed.

24. Plaintiff again alleges events occurring out of sequence. Deputy Gentempo placed Finn in a mandibular pressure *after* Finn continued to spit and *after* he told Finn repeatedly to stop spitting. [Motion, ¶ 25]. These facts remain undisputed.

30. Plaintiff again relies solely on the surveillance video which is unclear as to the facts alleged. There is no evidence supporting the argument that Finn refused to walk because he was injured. These facts remain undisputed.

4

32.     This paragraph remains undisputed as Plaintiff admits Deputy Gentempo received some level of treatment and was informed Finn had Hepatitis C. Plaintiff cannot dispute that Deputy Gentempo felt fortunate not to have contracted Hepatitis C. These facts are undisputed.

34.     Plaintiff does not reference any evidence disputing Finn did not land on the right side of his head. Plaintiff instead provides legal argument and references **Exhibit S** to the Motion, which clearly shows Plaintiff diving head-first into the ground during his fall, with his head making contact with the ground before his body. This fact remains undisputed.

36-38.     Plaintiff incorrectly states Finn's statement to Nurse Lindsey. Instead, Finn told nurse Lindsey that he had "lumps all over his head a result of being punched by a deputy." [Motion, **Exhibit N**, ¶ 3]. Nurse Lindsey discovered this to be untrue, as she examined Finn and found no lumps. [**Exhibit N**, ¶ 4]. The video is unclear and Plaintiff admits it does not show Defendant Gentempo making contact with Finn's head given it is obstructed by Deputy Siwakoti. [Response, ¶ 17]. These facts are undisputed. [Motion, **Exhibit N**, ¶¶ 3-9].

### III.     RESPONSE TO STATEMENT OF ADDITIONAL DISPUTED FACTS ("RSADF")

1.     Admit. As stated in Defendant Gentempo's Motion, the purpose of the control was to prevent further spitting. [Motion, **MSUMF**, ¶ 25].

2.     Admit, though a restrained inmate can still pose a threat. [Response, **Exhibit 7**, 105:5-7 ("Q. Does he pose less of a threat while he is handcuffed and wearing leg-irons? A. No").

3.     Admit but immaterial.

4.     Admit this paragraph accurately describes the testimony of Rose Ceja. Deny Ms. Ceja's testimony creates a dispute of material fact as to "whether his force was reasonable and

necessary" as this is improper lay witness testimony and not a fact. The opinion of the supervisor is immaterial.

5. Admit this paragraph accurately describes the referenced testimony. Deny it is material given that even if Defendant Gentempo struck Finn to prevent being further spit on, such would not violate the Fourteenth Amendment.

6. Defendant Gentempo denies his testimony is accurately reflected. In fact, he testified to the opposite. [Response, **Exhibit 1**, 198:2-15 ("That was the minimum amount that I could have used.")]. Defendant Gentempo denies that determining which level of force is appropriate is a fact rather than a legal conclusion.

IV.   ARGUMENT

A.   DIFFERENT STANDARDS FOR FOURTH AND FOURTEENTH AMENDMENT EXCESSIVE FORCE CLAIMS.

Plaintiff argues it should be permitted to proceed under the Fourteenth Amendment because the same standard applies to Fourth and Fourteenth Amendment excessive force claims. [Response, p. 11-13].

Extensive legal precedent supports these standards are not the same and require a weighing of different factors. *Compare Graham v. Connor*, 490 U.S. 386, 396, (1989) (outlining *Graham* factors applicable to Fourth Amendment claims) *with Williams v. Carbajol*, No. 20-CV-02119-NYW, 2021 WL 5579114, at *10 (D. Colo. Nov. 30, 2021) (outlining factors applicable to Fourteenth Amendment claims). As discussed below, the facts required to support these factors are not contained within the record.

B.   DEFENDANT GENTEMPO IS ENTITLED TO QUALIFIED IMMUNITY.

a.   No Fourteenth Amendment Violation.

Plaintiff argues Defendant Gentempo is not entitled to qualified immunity. In doing so, Plaintiff incorrectly argues Defendant Gentempo has argued the wrong legal standard. *Williams*, 2021 WL 5579114, at *10 (D. Colo. Nov. 30, 2021) ("In analyzing excessive force claims under the Fourteenth Amendment, courts consider: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor."') [Motion, pp. 12-18 (arguing relationship between force used and need presented, extent of injury, and motive)]. As Plaintiff points out, many cases have also applied the *Kingsley* factors. [Response, p. 13].

### 1. *Efforts Made to Temper Force.*

Both sets of factors weigh in favor of Deputy Gentempo as the only difference in these factors is the third factor: efforts made to temper force. Plaintiff's argument that Deputy Gentempo could have used an open palm gesture to control Finn while someone else retrieved the spit sock was not an option given it was unsafe to leave the other deputy with Finn and given they were trained precisely not to do so. [Response, ¶ 29]. It is undisputed that Deputy Gentempo and Deputy Siwakoti made multiple, unsuccessful attempts to deescalate Finn and temper force necessary. [Response, ¶¶ 1-7]. Regardless, Defendant Gentempo was not required to choose the best option, but only an option not grossly disproportionate to the need presented. *Niemyjski v. City of Albuquerque*, 379 F. Supp. 2d 1221, 1230 (D.N.M. 2005).

### 2. *Relationship Between Force Used and Need Presented.*

The first factor is the same: relationship between the need for the use of force and the force used. Of the cases referenced by Plaintiff, only three discuss force used in response to spitting; *Bonner-Turner v. City of Ecorse*; *Shumate v. Cleveland*; and *Isgett v. Boone*. [Response pp. 17-

7

18]. *Isgett* is distinguishable from the instant case given that rather than sustaining little to no injury, the plaintiff was placed in a restraint chair and punched three times resulting in a fractured jaw. [**RCDF**, ¶ 35]; *Isgett v. Boone*, No. CA 8:11-02783-CMC, 2013 WL 773070, at *3 (D.S.C. Feb. 28, 2013). In *Shumate v. Cleveland,* an officer could not explain why it was necessary to punch the plaintiff in the face before closing the car door after the plaintiff sprayed some saliva onto the officer while talking. *Shumate v. Cleveland*, 483 F. App'x 112, 114 (6th Cir. 2012). This is distinguished from the instant case given Deputy Gentempo explained the purpose of his force was to prevent further spitting. [**RSADF**, ¶ 1]; [Motion, ¶ 17]. Though *Bonner-Turner v. City of Ecorse* does hold a face-first shove into a wall is unreasonable force in response to a handcuffed inmate who spit on the officer, this is a Sixth Circuit case. *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 412 (6th Cir. 2015). The Tenth Circuit does not recognize a blanket rule that force cannot be used on a restrained individual. *Piedra v. True*, 169 F. Supp. 2d 1239, 1243 (D. Kan. 2001), *aff'd*, 52 F. App'x 439 (10th Cir. 2002). Further, other jurisdictions have held force can be used on a spitting, restrained individual. *Prymer v. Ogden*, 29 F.3d 1208, 1211 (7th Cir. 1994) (finding straight-arm stun technique to redirect Mr. Prymer's head reasonable even though Mr. Prymer was in handcuffs); *Barnes v. Alves*, 58 F. Supp. 3d 296, 311 (W.D.N.Y. 2014) (it was reasonable for deputies to take a handcuffed inmate to the floor who had spit in a deputy's face and swung his handcuffs near his face).

Plaintiff cannot dispute that Finn continuously spit on Defendant Gentempo and points to no evidence this did not occur. [**RCDF**, ¶ 17-19]; [Response 15-16]. Plaintiff cannot dispute Defendant Gentempo accidentally knocked over the wheelchair. [**RCDF**, ¶ 23]. Plaintiff cannot dispute Defendant Gentempo merely either struck or attempted to strike, covered Finn's face, and

8

used a mandibular pressure point hold to prevent Finn from continuously spitting. [**RCDF**, ¶ 17-19 and 22].

        3.    *Extent of Injury.*

The second factor is also the same: the extent of the injury inflicted. Plaintiff cannot dispute that Finn's one small bruise and two even smaller abrasions cannot be attributed to Deputy Gentempo's contact with Finn. [**RCDF**, ¶¶ 36-38]. There is no evidence within the record attributing these minor injuries to Defendant Gentempo. [**RCDF**, ¶¶ 17-19 and 22]. Given all of these injuries were minor and less than a dime in size, this factor weighs in favor of Defendant Gentempo. [Motion, **Exhibit N**, ¶¶ 4-7]. Plaintiff references two cases in support of its assertion that the second factor should weigh in favor of Finn – *Alexander v. City of Round Rock* and *Jackson v. Stubenvoll.* [Response pp. 17-18]. These cases do not stand for the proposition that minimal force means this factor weighs in favor of the plaintiff. Rather, these cases provide that the factors altogether may still weigh in favor of the plaintiff, *despite* minimal injury[3]. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017); *Jackson v. Stubenvoll*, No. 16-CV-05746, 2022 WL 991950, at *4 (N.D. Ill. Mar. 31, 2022). Defendant Gentempo notes that the *Jackson* court granted summary judgment for the officer where "Jackson has not produced sufficient evidence demonstrating Stubenvoll's force was excessive" where Stubenvoll was alleged to shove Jackson twice, kick him in the groin, and spin him around in response to Jackson "verbal[ly assaulting" him. *Jackson,* 2022 WL 991950, at *4.

---

[3] *Colburno v. Kessler* involves chaining a naked pretrial detainee to a hospital bed and thus humiliation was sufficient to allege an injury. *Colbruno v. Kessler*, 928 F.3d 1155, 1164 (10th Cir. 2019). There are no facts indicating Finn was subjected to such humiliation in the instant case and thus *Colbruno v. Kessler* is inapplicable.

9

     *4.*  *Officer Safety is a Legitimate Government Interest.*

  Plaintiff cannot dispute that Defendant Gentempo's force was to prevent the threat of further spitting rather than punitive. [**RCDF**, ¶ 17]. Instead, Defendant Gentempo testified the point of his contact was to "stop the threat, and the threat was him spitting on me again." [Motion, ¶ 17]. It is indisputable that dangerous diseases can be transmitted via saliva [**RCDF**, ¶ 20]. Accordingly, legal precedent establishes that an officer is entitled to defend himself in the same manner as Defendant Gentempo to prevent from being further spit on as officer safety is a legitimate government interest. [Motion, pp. 12-17]; *United States v. Windom*, 863 F.3d 1322, 1329 (10th Cir. 2017) ("[t]he safety of law enforcement is a legitimate and weighty concern") (citations and quotations omitted).

  b.  <u>No Clearly Established Law</u>.

  Plaintiff incorrectly alleges the level of specificity required as to whether Defendant Gentempo should have been on notice that his actions violated the Fourteenth Amendment. [Response pp. 19 (arguing cases need not be factually identical)]. While cases need not be factually identical, they do need to be analogous. If the circumstances are not analogous, only in the "rare obvious case" will an officer's unlawful actions be sufficient. *City of Escondido, v. Emmons*, 139 S. Ct. 500, 504 (2019). Given the many cases that allow an officer to use the type of force used by Defendant Gentempo to prevent himself from being further assaulted, the greater weight of authority from other circuit courts indicates it is not obvious that Defendant Gentempo was violating Plaintiff's Fourteenth Amendment rights. [Motion, pp. 12-18].

  As Plaintiff has not met either prong in the two-step qualified immunity analysis, the Court should grant summary judgment as to the claims against Defendant Gentempo.

Respectfully submitted,

*s/* Eric M. Ziporin
*Eric M. Ziporin*
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
E-mail: eziporin@sgrllc.com

*s/* Tiffany E. Toomey
*Tiffany E. Toomey*
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
E-mail:  ttoomey@sgrllc.com

*Counsel for Defendant Deputy Gentempo*

11

Case No. 1:21-cv-02160-CNS-SKC   Document 99   filed 08/07/23   USDC Colorado   pg 12 of 12

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of July, 2023, I electronically filed a true and correct copy of the above and foregoing **DEFENDANT GENTEMPO'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Matthew Cron
Omeed Azmoudeh
mc@rmlawyers.com
oa@rmlawyers.com
*Counsel for Plaintiff*

Benjamin Hartford
ben@bhartfordlaw.com
*Counsel for Plaintiff*

Jonathan Cooper
Jonathan.Cooper@denvergov.org
*Counsel for Defendant City and County of Denver*

s/ Tiffany E. Toomey
Attorney
